IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT D. BOYDSTUN, IV, | Civ. No. 3:11-cv-00429-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION ND, doing business as Elan Financial Services, EQUIFAX, INC., a Georgia Corporation, TRANSUNION LLC, a Delaware Limited Liability Company, EXPERIAN INFORMATION SOLUTIONS, INC., an Ohio Corporation, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Robert D. Boydstun, IV ("Boydstun") alleges claims against Defendants TransUnion

FINDINGS AND RECOMMENDATION - 1                                    [RMD]

LLC ("TransUnion") and U.S. Bank National Association ND ("U.S. Bank") under the provisions of the Fair Credit Reporting Act ("FCRA"), a federal statute governing the conduct of credit reporting agencies ("CRA") and furnishers of credit-report information ("furnishers"). 15 U.S.C. § 1681 *et seq.* Specifically, Boydstun alleges that Defendants failed to employ reasonable procedures to maximize the accuracy of his credit report, failed to adequately reinvestigate Boydstun's dispute of that credit report, and failed to remove unverified information from the credit report when it could not be verified. TransUnion moved for summary judgment on Boydstun's claims and argued: (A) that the disputed information was accurate; (B) its reinvestigation was adequate; (C) there is no evidence of willfulness; and (D) the creditor's failures in providing information preclude Trans Union's liability. At Boydstun's request, the court deferred ruling on issues C and D pending further discovery on those issues. Since then, Boydstun moved for partial summary judgment. With this Findings and Recommendation, the court addresses sections C and D of TransUnion's Motion for Summary Judgment (Dkt. No. 89), as well as Boydstun's Motion for Partial Summary Judgment (Dkt. No. 154). After reviewing the record, the court concludes parts C and D of TransUnion's Motion for Summary Judgment should be denied and Boydstun's Motion for Partial Summary Judgment should be granted in part and denied in part.

*Factual Background*[1]

In 2007, Boydstun opened a business credit card account on behalf of his business, Boydstun Metal Works, Inc., with U.S. Bank.[2] (TransUnion Memorandum (#90) ("TU Memo."), Ex. A at 3.)

_____

[1]Because the record is similar, the court takes its "Factual Background" from its June 6, 2013 Findings and Recommendation.

[2]The card was issued by "Elan Financial Services," a trade name for U.S. Bank. For simplicity's sake, the court will refer to Elan Financial Services as "U.S. Bank."

FINDINGS AND RECOMMENDATION - 2                                    [RMD]

The parties dispute whether Boydstun agreed to be personally liable for charges on the account.  On November 10, 2007, U.S. Bank sent notice to Boydstun regarding the credit card.  The notice stated that the card would be sent to Boydstun's business address, per his request.  The letter also notified Boydstun: "By activating and using your West Coast Bank Credit Card, you agree to accept the terms and credit limit assigned to the account." (Reger Declaration ("Decl.", Exhibit ("Ex.") 5 at 6.)

In 2009, Boydstun Metal Works "filed for bankruptcy and ceased operations." (TU Memo., Ex. B at 4.)  Some time after filing, U.S. Bank contacted Boydstun regarding the business credit account.  According to U.S. Bank, Boydstun was personally liable for the charges to that account.  Boydstun informed U.S. Bank that the debt was corporate and referred it to the bankruptcy trustee.  Nonetheless, U.S. Bank maintained that Boydstun was personally liable and continued to contact him in attempts to collect the debt. (Reger Decl., Ex. 2 at 5.)

I.  Communications with U.S. Bank

In a letter dated March 10, 2010, Boydstun's attorney contacted U.S. Bank Cardmember Services to again dispute his personal liability for the business credit account.  He explained that Boydstun repeatedly asked U.S. Bank for documentation showing he agreed to be personally liable for the debt in question, but U.S. Bank could not produce any such documentation.  He also explained that, aside from sending a credit-card statement and "a copy of a letter purportedly sent to Mr. Boydstun's home with a copy of [the] Cardmember Agreement," U.S. Bank refused to produce a document affirmatively demonstrating Boydstun's personal liability. (Reger Decl., Ex. 2 at 6.)  Boydstun's attorney thereafter notified U.S. Bank that he would seek legal recourse if it failed either to provide documentation of the credit agreement or cease collection efforts of the

disputed debt. (Reger Decl., Ex. 2 at 6.) U.S. Bank responded to Boydstun's letter by reaffirming their position that Boydstun was personally liable for the debt, and explaining that no original credit application existed because the business credit account was opened online. (September 19, 2014 Boydstun Declaration ("Boydstun Decl. II"), Ex. 2 at 4.)

Boydstun's attorney again contacted U.S. Bank on March 16, 2010, and U.S. Bank faxed a copy of the terms and conditions purportedly associated with Boydstun's credit account. Boydstun's attorney then authored a letter to U.S. Bank to inform them that the terms and conditions Boydstun received from U.S. Bank were dated 2010 and had been printed that day. (Reger Decl., Ex. 2 at 7.) He wrote: "Although you appear to be asserting that Mr. Boydstun agreed to these terms, there is clearly no way he could have agreed to terms in effect today. More importantly, even if these terms have not changed since 2007, you still have not provided any evidence to support you[r] assertion that Mr. Boydstun ever agreed to them." (Reger Decl., Ex. 2 at 7.) He also argued that the terms of the terms contained in the 2010 application provided by U.S. Bank require that credit cards of that type be initiated via a signed credit application and could not have been applied for online. He concluded that, "[t]here must . . . be a signed credit application on file somewhere." *Id.* On April 21, 2010, U.S. Bank responded by letter to reaffirm Boydstun was individually liable for the disputed debt. Attached to the letter was a copy of the "cardmember agreement and disclosure statement" purportedly associated with the account. (TU Memo., Ex. H at 3.)[3]

Boydstun's attorney again wrote to U.S. Bank, on April 28, 2010, to reiterate Boydstun's position that the debt had not been verified, but stipulated that if U.S Bank could verify the debt,

---

[3] The letter states that "monthly statements" were also included, but TransUnion has not included those statements among their exhibits.

Boydstun would pay it. (Reger Decl., Ex. 2 at 3.) U.S. Bank maintains, in its interrogatory responses, that Boydstun is personally liable on the card and that "U.S. Bank has an electronic record of the information plaintiff provided to it, which includes the software program edit that confirms that the applicant read and agreed to the terms of the cardholder agreement." (TU Memo., Ex. C at 3.)

Boydstun filed a complaint against U.S. Bank with the Oregon Department of Justice. U.S. Bank responded to this complaint on July 29, 2010, by letter. (Reger Decl., Ex. 5.) U.S. Bank stated that it had sent a copy of the "Cardmember Agreement" to Boydstun and enclosed "a copy of your Visa Business Card Cardholder Agreement similar to the one that was sent to you at the time you received the actual plastic credit card in November 2007 and identical to the one sent to [your attorney]." (Reger Decl., Ex. 5 at 8.)

II.  Communications with TransUnion

On July 4, 2010, Boydstun contacted TransUnion via online request seeking a consumer credit report. The report showed a business credit card issued by U.S. Bank categorized as an "Adverse Account." (Reger Decl., Ex. 1 at 4.) The report disclosed a balance of $10,631, that the balance had been discharged and written off as a loss, and that the account had been opened in November 2007 and closed in April 2010. The report also advised Boydstun how to initiate an investigation into a disputed item. (Reger Decl., Ex. 1 at 4.)

In a letter to TransUnion dated July 6, 2010, Boydstun disputed the accuracy of the report, specifically the credit account with U.S. Bank. (Reger Decl., Ex. 2 at 2.) He explained that he had not intended to incur personal liability for this account, that he had repeatedly asked U.S. Bank to produce a signed agreement which shows he personally guaranteed the debt, and that "[d]espite [his]

repeated requests, [U.S. Bank] ha[d] failed to produce such a document." (Reger Decl., Ex. 2 at 2.) Boydstun requested that TransUnion verify this information and, absent verification, remove the information from his credit report. (Reger Decl., Ex. 2 at 2.) Boydstun attached correspondence between himself and U.S. Bank Cardmember Services. His attorney wrote that Boydstun disputed the debt but that "if, in fact, Mr. Boydstun agreed to these terms, he will pay the debt." (Reger Decl., Ex. 2 at 3.)

On July 17, 2010, TransUnion submitted an Automated Consumer Dispute Verification ("ACDV") to U.S. Bank, notifying it that Boydstun disputed his liability on the account. (Reger Decl. ¶ 54.) "U.S. Bank responded to the ACDV by updating the date the Account was closed to March 2010, the balance of the Account to $10,700 and the date the Account information was verified to July 2010." (Reger Decl. ¶ 55.) There is no evidence TransUnion or U.S. Bank sought a copy of the original credit application ("Credit Application"). TransUnion reported the results of the verification to Boydstun, indicating that U.S. Bank had verified his individual liability. (Reger Decl. ¶ 56.) TransUnion also notified Boydstun that he could submit a consumer statement for attachment to his credit report, but Boydstun declined. (Reger Decl. ¶ 57.)

Boydstun responded to TransUnion by letter on October 19, 2010, wherein he expressed his concern that TransUnion had not adequately investigated the veracity of the information furnished to TransUnion by U.S. Bank. (Reger Decl., Ex. 5 at 1.) Boydstun stated that U.S. Bank had never produced "a signed application, personal guarantee, or any other document that would support its claim." *Id.* at 2. He asked TransUnion to reinvestigate his claim. He concluded: "You are obligated by law to remove this information from my credit report because it cannot be verified. If you truly believe it can be verified, please let me know the basis of that belief. If not, please correct

FINDINGS AND RECOMMENDATION - 6                                    [RMD]

my credit report immediately." *Id.* at 4.

In November 2010, TransUnion submitted a second ACDV to U.S. Bank requesting verification of Boydstun's debt. (Reger Decl., Ex. 6 at 2.)  In an explanation of its investigation, TransUnion sent a letter to Boydstun stating that it had again verified his account with U.S. Bank and would not modify his credit report.  (Reger Decl., Ex. 7 at 2.)

III.  Credit Account Documents

In the course of discovery in this lawsuit, U.S. Bank admitted that it had "not yet located a signed credit application for the above referenced account, but ha[d] verified that there was an electronically signed application and a paper cardholder agreement."  (Boydstun Decl., Ex. 9 at 2.) TransUnion, in response to a request for admission that it lacked evidence that a signed credit application exists, admitted:  "TransUnion states that it has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this Request." (Boydstun Decl., Ex. 10 at 2.)

In October 2011, well after Boydstun filed his Complaint, Defendants produced a copy of the original credit application (the "Credit Application") for the disputed account and other documents associated with the account's formation and maintenance.  (TU Memo, Ex. D.)  On the Credit Application, the fields "Business Information," "Business Owner Applicant Information," and "Individual Employee Information" are filled in with information related to Boydstun Metal Works, Boydstun, and Laurie Weinsoft ("Weinsoft").  (TU Memo., Ex. D at 4.)  The document is signed by both Boydstun and Weinsoft, but neither signature is dated. (TU Memo., Ex. D at 4.)  The document contains a section wherein the applicant chooses the specific credit card sought by making a check in the box next to the credit card listed, and no mark is made in this section to indicate the desired

card. (T.U. Memo., Ex. D at 4.)  The terms of the application state that "the Business Owner is individually liable and jointly liable with the Business for all charges made on the account." (TU Memo., Ex. D at 4.)

A second document, the "Visa Business Card Company Profile" form, identifies Boydstun Metal Works as the business in question, and Boydstun as the "individual who originally applied for [the] Company's Business Card." (TU Memo., Ex. D at 8.)  It reiterates that Boydstun "agree[s] to be jointly and severally liable, as principal and not as surety or guarantor, to repay any and all transactions charged to any and all Accounts, plus interest and other charges, according to the terms of the Visa Business Cardmember Agreement[.]"  *Id.*  At deposition, Boydstun admitted that the signatures on these documents appeared to be his, though he did not admit to actually signing the documents and did not recall signing them.  (TU Memo., Ex. F at 3; Ex. A at 6-7.)

*Procedural Background*

Boydstun filed his original complaint in March 2011 and filed an Amended Complaint ("the Complaint") roughly four months later. (Dkt. Nos. 1, 35.)  In June 2012, TransUnion moved for summary judgment and argued:  (A) Boydstun's claims fail as a matter of law because Boydstun was, in fact, personally liable for the debt; (B) TransUnion did not report any factual deficiencies; (C) Plaintiff can produce no evidence that TransUnion acted willfully, thus precluding an award of punitive damages; and (D) TransUnion cannot be held liable because statutory law shifts the burden of providing accurate information to the "furnisher." (Defendant TransUnion, LLC's Motion for Summary Judgment at 2-3.)  Thereafter, Boydstun filed, and the court granted, a motion to defer ruling on parts C and D until discovery could be completed. (Dkt. No. 103.)  The court issued a findings and recommendation on June 6, 2013, denying parts A and B of TransUnion's Motion for

FINDINGS AND RECOMMENDATION - 8                                    [RMD]

Summary Judgment. *Boydstun v. U.S. Bank Nat'l Ass'n N.D.*, Civ. No. 3:11-cv-00429-AC, 2013 WL 5524693, at *1 (D. Or. June 6, 2013).

In September 2014, after the parties had engaged in discovery, Boydstun filed a motion for partial summary judgment and TransUnion filed a "Motion for Ruling on Parts C and D of Motion for Summary Judgment." (Dkt. Nos. 154, 156.)  The court now addresses the cross-motions for summary judgment.

### Legal Standard

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the burden of establishing that no issue of fact exists and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the movant meets his or her burden of production, the nonmovant must "go beyond the pleadings [ ] by [his or] her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). Conclusory allegations which are unsupported by factual material such as affidavits and documentary evidence are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

### Discussion

There are two motions for partial summary judgment. In the first motion, TransUnion argues it is insulated from liability because the FCRA shifts to "furnishers" the burden of accurately

FINDINGS AND RECOMMENDATION - 9                                        [RMD]

reporting credit information.  It also moves for summary judgment on Boydstun's request for punitive damages.  Boydstun also moves for partial summary judgment and asks the court to find: (1) TransUnion and U.S. Bank failed to conduct reasonable investigations and failed to consider Boydstun's evidence; (2) TransUnion and U.S. Bank violated the FCRA by failing to remove the disputed information when it could not be verified; and (3) Defendants wilfully violated the FCRA. Because the two motions involve similar issues, the court will address the motions by subject beginning with TransUnion's argument that the FCRA insulates it from liability.  The court will then address Boydstun's motions on the merits of his failure-to-investigate claim and failure-to-remove claim.  Finally, the court will discuss whether either movant is entitled to summary judgment on the question of whether the Defendants' alleged FCRA violations were willful.

I.  Complete Insulation from Liability

TransUnion argues it should be excused from liability because the FCRA's framework places the burden of ensuring accurate credit reporting only on the furnisher of credit information,  here, U.S. Bank.  TransUnion is correct that the FCRA requires furnishers to report only accurate information to CRAs.  15 U.S.C. § 1681s-2.  However, nothing in the FCRA or in caselaw interpreting the FCRA supports TransUnion's argument that the duty imposed on furnishers by the FCRA absolves a CRA of liability for its own FCRA violations.  CRAs perform "a vital role in assembling and evaluating consumer credit . . . ." 15 U.S.C. § 1681(a)(3).  Thus, Congress enacted the FCRA for the express purpose of "requir[ing] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b).  Further, the FCRA

specifically holds liable CRAs who willfully or negligently fail to investigate a dispute or remove unverified information from a consumer's credit report. 15 U.S.C. §§ 1681i, 1681n. Permitting a CRA to wholly avoid liability due to a furnisher's mistake would subvert the purpose of the FCRA and render inoperative the express terms of the statute.

TransUnion next argues that, because it contractually requires furnishers to provide accurate information, it would be unreasonable to hold it liable for U.S. Bank's inaccurate reporting. Again, the law does not support TransUnion's contention. The contractual requirement that U.S. Bank provide TransUnion with accurate information may give rise to a breach-of-contract claim between U.S. Bank and TransUnion, but it does not abrogate or otherwise affect TransUnion's liability to a third-party consumer injured because of TransUnion's own unlawful behavior. Therefore, the court should deny "Part D" of TransUnion's Motion for Summary Judgment.

## II.  Adequate Investigation and Consideration

Boydstun contends that, by failing to investigate his dispute and consider the materials enclosed in his dispute letter, the Defendants violated the FCRA. TransUnion and U.S. Bank maintain their investigations were reasonable and fully complied with the FCRA. The court concludes that, although the Defendants' investigations were cursory, the record does not support a finding that they were unreasonable as a matter of law.

### A.  *TransUnion*

Boydstun argues that TransUnion violated its duty under the FCRA to thoroughly investigate his dispute. TransUnion contends that, because Boydstun disputed the debt on a legal basis, as opposed to a factual basis, TransUnion was not required to go beyond the ACDV process to investigate his assertions.

FINDINGS AND RECOMMENDATION - 11                                        [RMD]

The FCRA provides that:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.

15 U.S.C. § 1681i(a)(1)(A). Because CRAs receive so many credit report disputes each year, they typically rely on the ACDV process to investigate and verify disputed debts. However, courts have held that under certain circumstances, the ACDV process is too cursory to be a "reasonable investigation" as contemplated by the drafters of the FCRA. *See Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066 (D. Or. 2011) (finding that reliance on the ACDV process alone was not reasonable as a matter of law and denying defendant CRA's motion for summary judgment.)

Whether a CRA may fulfill its duty to investigate solely through the ACDV process depends primarily on the qualitative character of the consumer's dispute and the quantity of support proffered by the consumer. *See Carvalho Equifax Info. Serv., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010) (finding the ACDV a sufficient response where the consumer disputed her credit-report entry on legal, as opposed to factual grounds). In *Carvalho*, the plaintiff disputed an entry on her credit report via letter to a CRA. *Id.* at 882. Of note, her letter stated, "I dispute the above item on my enclosed [c]redit [r]eport. These bills arose out of the medical treatment I was covered for by Blue Cross of California. For some reason that is unknown to me, they did not pay these medical bills." *Id.* The CRA sent an ACDV to the debt holder, who confirmed that the debt had not been paid and should remain on plaintiff's credit report. *Id.* The CRA engaged in no further investigation. *Id.* The plaintiff brought suit under the FCRA claiming the CRA did not sufficiently investigate her dispute. *Id.* The district court dismissed plaintiff's suit for failure to state a claim and the Ninth Circuit

FINDINGS AND RECOMMENDATION - 12                                    [RMD]

affirmed. *Id.* In finding the CRA's investigation consistent with the FCRA's requirements, the Ninth Circuit distinguished between situations where the consumer presents a legal-based attack on latent errors in a credit report and those where a consumer presents fact-based attacks on patent credit-report errors. *Id.* at 891. The court observed that "credit reporting agencies are not tribunals" responsible for "provid[ing] a legal opinion on the merits" as part of its reinvestigation. *Id.* at 891-92. "Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.* at 891. Instead of disputing the legal validity of a debt through a reinvestigation request, the court instructed consumers to "first attempt to resolve the matter directly with the creditor or furnisher, which 'stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation.'" *Id.* at 892 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009)).

However, where a consumer goes beyond boiler plate dispute language and presents specific facts which support their dispute, the ACDV process is usually not sufficient as a matter of law. *Bradshaw*, 816 F. Supp. 2d at 1074. In *Bradshaw*, the plaintiffs negotiated a loan modification and complied with the loan servicer's instructions to not pay the monthly payments for three months "to allow the modification to kick in." *Id.* at 1072. The loan servicer nonetheless reported the loan to the plaintiffs' CRAs as delinquent. *Id.* at 1070. The plaintiffs contacted their CRAs and disputed the debt, explaining that they negotiated a modification and were instructed by the loan servicer to temporarily stop payments. *Id.* The CRAs sent ACDVs which did not describe the factual basis for the plaintiffs' dispute and, after receiving a response from the furnisher, added a note to plaintiffs' credit report referencing the modification agreement. *Id.* However, the CRAs did not remove the

debt from plaintiffs' report and, aside from sending a second ACDV, did no further investigation. *Id.* The court held that the ACDV process was not sufficient as a matter of law and refused to grant the CRA defendant's motions for summary judgment. *Id.* at 1075. The court held that, because the ACDVs contained little-to-no factual information, a jury could find that the insubstantial investigation completed by the CRAs violated the FCRA *Id.* at 1074-75.

In his first letter to TransUnion, Boydstun presented a mixed argument of law and fact to dispute the Entry. Boydstun wrote "I dispute that this is an individual account or that I have any individual responsibility for this account." (Sept. 14, 2012 Declaration of Robert D. Boydstun IV (Boydstun Decl. I), Ex. 7 at 1.) He continued, "I was informed when I opened this credit card on behalf of my former business that I would not be personally liable for this corporate debt." (Boydstun Decl. I, Ex. 7 at 1.) Moreover, Boydstun attached to his dispute letter his previous correspondence with U.S. Bank which demonstrated U.S. Bank's inability to produce an original credit application and the impossibility of U.S. Bank's explanation that the disputed account was opened online. (Boydstun Decl. I, Ex. 7 at 2-3.) In his letter, he wrote, "[U.S. Bank] has never shown me a signed application, personal guarantee, or any other document that would support its claim." (Boydstun Decl. I, Ex. 7 at 1.) He then outlined the facts which rebut U.S. Bank's claim that he was personally responsible for the Disputed Debt, including his contention that no credit application existed because he applied for the credit card online. (Buckley Decl. I, Ex. 8 at 2.)

TransUnion's resulting investigation at best was cursory. Upon receiving Boydstun's dispute letter, TransUnion sent an ACDV to U.S. Bank which stated "CONSUMER STATES . . . Not liable for acct (I e ex-spouse business) If liable provide complete ID and ECOA Code." (Reger Decl., Ex. 3 at 1.) TransUnion did not forward to U.S. Bank or attach to the ACDV Boydstun's dispute letter

or Boydstun's evidence showing U.S. Bank could not produce a copy of the original credit application. (*Id.*; Reger Depo. at 28:8-13.) The second ACDV was similarly cursory and stated: "CONSUMER STATES . . . Not liable for acct (I e ex-spouse business) If liable provide complete ID and ECOA Code Disp Curr Bal-Verify Orig Loan Amt Schld Monthly Pymt Amt Act Pymt Amt Amt Past Due Curr Bal and Orign Chargoff Amt." (Reger Decl., Ex. 6 at 1.) Again, there is no evidence TransUnion forwarded Boydstun's dispute letter or supporting evidence, or otherwise made an attempt to resolve the factual issues raised by Boydstun.

Unlike the *Carvalho* plaintiff, who presented only legal grounds for her argument that she was not responsible for her debt, Boydstun presented factual evidence to support his claim that the Entry should be removed from his credit report. However, the basis for Boydstun's claim was not a pure issue of fact as was the issue in *Bradshaw*. In *Bradshaw*, the issue was whether or not a loan modification existed, the terms of which superceded those of the loan which was reported delinquent. Here, Boydstun's dispute letter raises multiple issues, not all of which are wholly factual. Even assuming, without deciding, that Boydstun was "informed when [he] opened [the] credit card . . . that [he] would not be personally liable for this corporate debt," Boydstun's dispute letter also raises legal issues which TransUnion was not in a position to adjudicate. Because Boydstun's dispute letter and request for reinvestigation raised issues of fact and law, his case is distinguishable from *Bradshaw*. Moreover, unlike here, the *Bradshaw* court was ruling only on the defendant's motion for summary judgment and was required to view all evidence in the nonmoving plaintiff's favor. Here, the plaintiff is the movant and is not entitled to have evidence construed, and permissible inferences drawn, in his favor. Thus, *Bradshaw* is not dispositive in Boydstun's favor.

The reasonableness of TransUnion's investigation certainly is questionable, particularly

FINDINGS AND RECOMMENDATION - 15                                    [RMD]

considering TransUnion failed to forward Boydstun's dispute letter and supporting evidence to U.S. Bank. However, the Ninth Circuit has held that in FCRA cases, "summary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment." *Gorman,* 584 F.3d at 1157, (quoting *In re Software Toolworks, Inc.,* 50 F.3d 615, 621 (9th Cir. 1994)) (internal quotation marks omitted). The parties to this case present no reason to depart from that rule. Thus, the court concludes that on the record before it, Boydstun fails to meet his burden of showing he is entitled to summary judgment that TransUnion's investigation of his dispute was unreasonable.

### B. U.S. Bank

Boydstun argues U.S. Bank violated 15 U.S.C. § 1681s-2 when it failed to engage in a reasonable investigation after receiving notice of Boydstun's dispute from TransUnion. U.S. Bank contends Boydstun is not entitled to summary judgment becuase there remain genuine issues of fact and because Boydstun fails to show he suffered damages as a result of U.S. Bank's alleged violation of the FCRA.

The FCRA places on furnishers a duty to inviestigate disputed credit-report entries:

After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall–

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; [and]

(C) report the results of the investigation to the [CRA]

FINDINGS AND RECOMMENDATION - 16                    [RMD]

> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs ] to which the person furnished the information . . . ;

15 U.S.C. § 1681s-2(b)(1). Although Congress omitted the word "reasonable" from § 1681s-2(b)(1), the Ninth Circuit requires a furnisher's investigation to be reasonable. *Gorman*, 584 F.3d at 1157. In *Gorman*, the court found that the FCRA requires furnishers to undertake a reasonable investigation because, among other things, "the plain meaning of the term 'investigation' is a detailed inquiry or systematic examination, which necessarily requires some degree of careful inquiry." *Id.* at 1155. The court continued, "a provision that required only a cursory investigation would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry." *Id.*

The *Gorman* court also examined the practical bounds of what constitutes a "reasonable investigation." *Id.* at 1157. The court explained that "[t]he pertinent question is [] whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* Where the furnisher is provided "scant" information from the CRA regarding the facts of the dispute, the furnisher need not engage in an exhaustive, all-encompassing, investigation to meet its burden to engage in a "reasonable" investigation. *Id.* However, where the consumer, through the CRA, provides factual information which gives rise to questions about the completeness or accuracy of the credit-report entry, the burden on the furnisher increases. *Id.*

In defining the bounds of a "reasonable investigation," the *Gorman* court drew heavily from the Fourth Circuit case *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426 (4th Cir. 2004). In *Johnson,*

the CRA gave notice to the furnisher which read: "CONSUMER STATES BELONGS TO HUSBAND ONLY;" "WAS NEVER A SIGNER ON ACCOUNT. WAS AN AUTHORIZED USER." *Id.* at 429. In response, the furnisher verified the plaintiff's identifying information but did not attempt to verify whether the plaintiff signed the credit application form. *Id.* at 431. Plaintiff filed suit under the FCRA and alleged that the furnisher did not undertake a reasonable investigation of her claims. *Id.* The defendant moved for summary judgment, which the district court granted. *Id.* at 429. On appeal, the Fourth Circuit reversed and held that a jury could find that it was unreasonable for the furnisher to not investigate sources outside their own internal records to verify or disprove the consumer's claim. *Id.* However, the Ninth Circuit clarified in *Gormon* that *Johnson* should not be read to find an investigation *per se* unreasonable where the furnisher fails to go beyond its own internal files to investigate a consumer's dispute. *Gormon*, 584 F.3d at 1160.

In response to TransUnion's first ACDV, U.S. Bank reviewed its internal records to verify "that it's the same name, same social security number, and that it's a charged off account . . . ." (Hunsaker Decl., Ex. 20 at 2-3.) U.S. Bank did not contact the bank that issued the business credit card or attempt to obtain a copy of the original credit application. Upon receiving TransUnion's second ACDV, U.S. Bank again reviewed the identifying information and verified that the information in its internal records matched that on Boydstun's credit report. Again, U.S. Bank did not attempt to obtain the signed credit application.

U.S. Bank had in its possession evidence that its records were incorrect or incomplete, so it may have been required to investigate beyond its own internal records. (Boydstun Decl. Ex. 6.) However, before the court can grant summary judgment in Boydstun's favor on his reinvestigation claim, he must demonstrate that the credit report was "incomplete or inaccurate." *Bradshaw*, 816

FINDINGS AND RECOMMENDATION - 18                         [RMD]

F. Supp. 2d at 1071. The court held in its June 6, 2013 Findings and Recommendation that a genuine issue of material fact exists as to whether the Entry was "incomplete or inaccurate" such that Boydstun may succeed on his reinvestigation claim. *Boydstun v. U.S. Bank Nat'l Ass'n N.D.*, Civ. No. 3:11-cv-00429-AC, 2013 WL 5524693, at *8 (D. Or. June 6, 2013) (adopted in relevant part by *Boydstun v. U.S. Bank Nat'l Ass'n N.D.*, 2013 WL 5522595, at *1 (D. Or. Sept. 30, 2013). Because an issue of fact remains on this threshold issue, summary judgment is inappropriate. Further, the Ninth Circuit consistently has istructed that questions of reasonableness are generally for a jury to decide. The reasonableness question in this case, therefore, is one for the jury. Thus, the court should deny Boydstun's motion for summary judgment on whether U.S. Bank's investigation was unreasonable.

III.  Failure to Remove When it Could Not be Verified

Boydstun next contends he is entitled to summary judgment on his claim that Defendants violated the FCRA by failing to remove the disputed entry from his credit report when it could not be "verified." The Defendants claim they breached no such duty.

The FCRA requires:

[I]f an item of information disputed by a consumer . . . cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

(i) modify that item of information;

(ii)  delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(E); *see also* 15 U.S.C. § 1681i(a)(5)(A) (placing the duty on CRAs to modify, delete, or block the reporting of unverifiable information). The duty to modify, delete, or

FINDINGS AND RECOMMENDATION - 19                    [RMD]

block the reporting of "unverifiable" information arises only when the information cannot be "verified after reinvestigation." It is undisputed that neither Defendant modified, deleted, or blocked reporting of the disputed debt, so the court's analysis turns on whether the Entry could not be "verified."

The FCRA does not define the term "verified," and neither the Supreme Court nor the Ninth Circuit has defined that term as it is used in the FCRA. Nor does Boydstun attempt to define that term or cite any authority which defines "verify" in a way that supports his argument for partial summary judgment. "[U]nless defined, words in a statute will be interpreted as taking their ordinary, contemporary, common meaning." *U.S. v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). To derive a word's plain meaning, the court may consult dictionary definitions which "we trust to capture the common contemporary understandings of the word." *Id.* The American Heritage Dictionary of the English Language defines "verify" as "to demonstrate the truth or accuracy of, as by the presentation of evidence." The American Heritage Dictionary of the English Language, 1924 (5th ed. 2011).

Applying the plain-meaning definition above, the court cannot conclude as a matter of law that the disputed debt remained "unverified" upon reinvestigation. TransUnion attempted to verify the information in the Entry by sending an ACDV to U.S. Bank, who responded that the debt did, in fact, belong to Boydstun. U.S. Bank assured TransUnion the Entry was correct by reviewing their own internal records. However, Defendants had in their possession significant evidence that called into question the accuracy of U.S. Bank's internal records. Attached to his request for reinvestigation, Boydstun provided Defendants with evidence that: (1) the debt at issue was incurred on a business credit card issued to Boydstun Metal Works; (2) Boydstun was listed as an "authorized officer" and not a "cardholder" on materials related to the credit card; (3) no credit application linked

to the business credit account could be produced; (4) Elan's contention that no application existed because the account was opened online was patently false because West Coast Bank required consumers to open that type of business credit card in person; and (5) Boydstun opened the business credit account with West Coast Bank on the condition he not be held personally liable for the account.  (Reger Decl. Ex. 5 at 2.)  In the face of this evidence, U.S. Bank's response to TransUnion's ACDV did not "demonstrate the truth or accuracy of" U.S. Bank's contention Boydstun was personally liable for the debt.  When significant ambiguity remained after their investigations, Defendants were legally obliged to modify, delete, or block reporting of the Entry at least until they obtained verification that Boydstun in fact was personally liable for the debt. Because the record demonstrates Defendants failed as a matter of law to fulfill their duties under §§ 1681s-2(b)(1)(E) and 1681i(a)(5)(A), the court should grant Boydstun's motion for partial summary judgment on whether U.S. Bank failed to delete, modify, or block information that could not be verified.

## IV.  Willfullness

Both Boydstun and TransUnion move for summary judgment on whether Defendants' FCRA violations were willful.  Boydstun contends that, given the Defendants' cursory investigations and refusal to correct the disputed entry upon investigation, the record clearly demonstrated a willful disregard for the requirements of the FCRA.  Conversely, TransUnion moved for summary judgment on Boydstun's claim for punitive damages, arguing that no reasonable jury could find their conduct was willful.  The court concludes neither movant is entitled to summary judgment.

The FCRA provides that "[a]ny person who willfully fails to comply with any requirement imposed" by that statute may be subject to statutory damages ranging from $100 to $1000.  15

U.S.C. § 1681n(a). The court may also, at its discretion, allow punitive damages to compensate a plaintiff injured by the defendant's willful violation of the FCRA. 15 U.S.C. § 1681n(a)(2). The Supreme Court has held that, as used in the FCRA, the term "willful" encompasses "knowing" violations of the statute as well as "reckless" violations. *Safeco Ins. Co.v. Burr*, 551 U.S. 47, 68 (2007). "While 'the term recklessness is not self-defining,' the common law has generally understood it . . . [as] entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.*

The issue of whether a defendant acted willfully is not suitable for disposition in this case on summary judgment. Courts have "uniformly" held that "whether a FCRA violation is willful is a matter for the jury." *Ashby v. Farmers Ins. Co. Of Oregon*, 565 F.Supp. 2d 1188, 1205 (9th Cir. 2008) (citing cases from the Third Circuit, Central District of California, and District of Oregon). The record here contains evidence creating a question of fact on this issue. Thus, the court should deny TransUnion's and Boydstun's cross-motions for partial summary judgment on the issue of willfulness.

## Conclusion

For the aforementioned reasons, parts C and D of TransUnion's Motion for Summary Judgment should be DENIED (Dkt. No. 89), and Boydstun's Motion for Partial Summary Judgment (Dkt. No. 154) should be GRANTED in part and DENIED in part.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 9, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 22                                    [RMD]

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of May, 2015.

JOHN V. ACOSTA
United States Magistrate Judge