IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT D. BOYDSTUN, IV,

                    Plaintiff,

      v.

U.S. BANK NATIONAL ASSOCIATION ND,
dba Elan Financial Services;
TRANS UNION, LLC,

                    Defendants.

No. 3:11-cv-00429-HZ

OPINION & ORDER

Jay A. Zollinger
Outside General Counsel Services, P.C.
dba Law Office of Jay Zollinger
10975 SW Avocet Ct.
Beaverton, OR 97007

Craig R. Berne
Harris Berne Christensen, LLP
5000 Meadows Rd., Ste. 400
Lake Oswego, OR 97035

      Attorneys for Plaintiff

//

1 - OPINION & ORDER

Julie R. Vacura
Danielle J. Hunsaker
Larkins Vacura, LLP
121 SW Morrison St., Ste. 700
Portland, OR 97204

      Attorneys for Defendant U.S. Bank

Camille R. Nicodemus
Robert J. Schuckit
William R. Brown
Schuckit & Associates, P.C.
4545 Northwestern Dr.
Zionsville, IN 46077

Nicholas J. Henderson
Motschenbacher & Blattner, LLP
117 SW Taylor St., Ste. 200
Portland, OR 97204

      Attorneys for Defendant Trans Union

HERNÁNDEZ, District Judge:

      In this Fair Credit Reporting Act ("FCRA") case, Plaintiff Robert Boydstun seeks to introduce expert testimony about the economic damages he suffered after a failed attempt to secure financing for a forklift to be used for one of his businesses. Defendants jointly moved to exclude that evidence as irrelevant because, they argue, damages flowing from the use of a credit report for a business or commercial transaction are not recoverable under the FCRA. The Court agrees, and Defendants' motion is granted.

## BACKGROUND

      This long-running case centers around a dispute over a business credit card Boydstun had for his business, Boydstun Metal Works. <u>Boydstun v. U.S. Bank Nat. Ass'n ND</u>, No. 3:11-CV-

00429-AC, 2013 WL 5524693, at *1 (D. Or. June 6, 2013), <u>report and recommendation adopted</u> <u>as modified,</u> No. 3:11-CV-00429-AC, 2013 WL 5522595 (D. Or. Sept. 30, 2013). When Boydstun Metal Works went bankrupt in 2009, the card issuer, Defendant U.S. Bank, attempted to collect the outstanding balance from Boydstun. Boydstun insisted that it was a business card for which he did not agree to be personally liable. U.S. Bank maintained that he was personally liable, and after Boydstun rebuffed further attempts to collect the debt, U.S. Bank reported the outstanding balance on Mr. Boydstun's credit report. <u>Id.</u>

Boydstun was also the sole shareholder of another business, Miranda Homes. Mettler Report at 1, ECF 184-1. Through this business, Boydstun aimed to build "green" residential homes that utilized little electricity. <u>Id.</u> Although formed in the late 1990s, the company did not begin operating until 2009, as Boydstun Metal Works was shutting down. <u>Id.</u> Boydstun's plan was to grow Miranda Homes using his own personal finances and good credit rating until the company could borrow money on its own. Pl. Resp. at 4, ECF 202. By June of 2010, he had poured about $1.6 million of his own funds into the company. In that same month, Miranda Homes applied for credit to purchase an approximately $12,000 forklift, but was denied. Def. Mot. at 3; Hunsaker Decl. Ex. C at 5, ECF 199. The company attempting to sell Boydstun the machine asked the lender to re-review the application with Boydstun's personal credit-worthiness as an additional factor. <u>Id.</u> at 7. But again, the lender denied the application, citing "derogatory information" on Boydstun's credit report. <u>Id.</u> Boydstun subsequently filed the present suit to challenge the negative item from U.S. Bank on his report.[1]

In the meantime, Boydstun worked to grow Miranda Homes and hunted more funds. He believed additional applications for financing would likely meet a similar fate if the negative

---

[1] In the course of this litigation, U.S. Bank found documents showing that Boydstun had, in fact, agreed to be personally liable for the Boydstun Metal Works credit card.

information from U.S. Bank remained on his credit report; instead of seeking credit, he loaned the business an additional $751,000. Pl. Resp. at 5. Eventually, Miranda Homes required more capital than Boydstun could provide, and the business ceased operating in 2014 despite strong customer interest. Id. The company never repaid the money Boydstun lent it, and never generated the profits and resulting distributions that Boydstun hoped it would. Id.

All the while, this litigation churned. After extensive discovery and motions practice before Magistrate Judge Acosta, the matter is now scheduled for a four-day jury trial before this Court starting in June. As part of the required pretrial disclosures, Boydstun submitted an expert report authored by Mr. Greg Mettler, who seeks to explain to the jury the economic damages Boystun suffered from the disputed credit report item and the resulting credit denial for the forklift. Mettler Report at 1.

Mr. Mettler examined financial reports and projections for Miranda Homes and concluded there was insufficient evidence to prove damages based on the company's expected future profits. Mettler Report at 5. He found, however, an alternative approach for computing damages: "If the business had been able to obtain financing," Mettler wrote, "in all likelihood, Mr. Boydstun would not have need to loan the additional $751,000 to the Company[.]" Id. at 5–6 Therefore, Mr. Mettler concluded that this $751,000 was the total economic damages Boydstun could prove with reasonable certainty as a result of the denial of credit for Miranda Homes. Id. at 6.

Currently before the Court is Defendants' joint motion to exclude Mr. Mettler's expert testimony as irrelevant and unreliable. Defendants assert that the FCRA only protects consumers in the context of consumer credit transactions, and since the credit denial here was based on a commercial transaction, the damages Boydstun seeks are not recoverable. Thus, Defendants

argue that Boydstun should be excluded from introducing testimony from Mr. Mettler, or any other evidence for that matter, about the economic damages he seeks. Defendants' Joint <u>Daubert</u> Motion at 5–10, ECF 198. Furthermore, Defendants attack Mr. Mettler's opinion as unreliable and otherwise inadmissible. <u>Id.</u> at 10–15.

## STANDARDS

Federal Rule of Evidence 702 gives the trial court discretion to allow expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue" if (1) it is "based upon sufficient facts or data," (2) it is "the product of reliable principles and methods," and (3) the expert "has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. "Broadly speaking, expert opinion is admissible if the expert is qualified and the expert's testimony is both reliable and relevant." <u>Cramblett v. McHugh</u>, No. 3:10-CV-54-PK, 2012 WL 7681280, at *1 (D. Or. Nov. 19, 2012) (citing <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993) (additional citation omitted).

Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. <u>City of Pomona v. SQM N. Am. Corp.</u>, 750 F.3d 1036, 1044 (9th Cir.) (citation and quotation marks omitted); <u>see also</u> <u>Estate of Barabin v. AstenJohnson, Inc.</u>, 740 F.3d 457, 463 (9th Cir. 2014) ("Relevancy simply requires that the evidence . . . logically advance a material aspect of the party's case.") (citation and quotation marks omitted).

Expert testimony is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." <u>City of Pomona</u>, 750 F.3d at 1044 (citation and quotation marks omitted). The inquiry into reliability is "a flexible one," and the district court has "broad latitude" in shaping its contours. <u>Estate of Barabin</u>, 740 F.3d at 463. "The Supreme Court has suggested several factors that can be used to determine the reliability of

expert testimony: 1) whether a theory or technique can be tested; 2) whether it has been

subjected to peer review and publication; 3) the known or potential error rate of the theory or

technique; and 4) whether the theory or technique enjoys general acceptance within the relevant

scientific community. Id. (citing Daubert, 509 U.S. at 592–94) (quotation marks omitted).

 "In evaluating proffered expert testimony, the trial court is a gatekeeper, not a fact

finder." City of Pomona, 750 F.3d at 1043–44  (citation and quotation marks omitted). The test

"is not the correctness of the expert's conclusions but the soundness of his methodology," and

when an expert meets the threshold established by Rule 702, the expert may testify and the fact

finder decides how much weight to give that testimony. Id. at 1044 (citation and some quotation

marks omitted). Challenges to the weight of the evidence and the expert's credibility are for a

jury, not a trial judge, to evaluate. Id.

DISCUSSION

 Boydstun asserts that negative information on his personal credit report prevented

Miranda Homes from securing financing for a forklift. He seeks to introduce testimony from Mr.

Mettler to describe to the jury how that denial of credit to Miranda Homes caused Boydstun to

loan the fledgling company an additional $751,000, which it never paid back. Defendants

contend that the FCRA does not apply where a credit report is used for a business, commercial,

or professional purpose, and ask the Court to exclude Boydstun from offering evidence, from

Mr. Mettler or any other source, about economic damages based on that theory.

 In 1970, Congress enacted the FCRA "to require that consumer reporting agencies adopt

reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15

U.S.C. § 1681(b). "To guard against the use of inaccurate or arbitrary information in evaluating

an individual for credit, insurance, or employment, Congress required that consumer reporting

agencies 'follow reasonable procedures to assure maximum possible accuracy of the information

concerning the individual about whom' a credit report relates." Bacharach v. Suntrust Mortgage,

Inc., No. CIV.A. 14-962, 2015 WL 6442493, at *2 (E.D. La. Oct. 23, 2015) (quoting 15 U.S.C. §

1681e(b)).

        A consumer reporting agency that negligently violates FCRA's requirements is liable to a

"consumer" for "any actual damages sustained[.]" 15 U.S.C. § 1681o(a)(1). A plaintiff must,

therefore, be a "consumer," which is defined as an "individual," to recover damages under the

FCRA. 15 U.S.C. § 1681a(c). It follows then, unremarkably, that the FCRA "does not provide

protection for business entities[.]" Wisdom v. Wells Fargo Bank NA, No. CV-10-2400-PHX-

GMS, 2012 WL 170900, at *2 (D. Ariz. Jan. 20, 2012) (citation and quotation omitted).

        Moreover, and critically important here, numerous Circuit and District Courts have

examined the statutory text, legislative history, and administrative interpretation of the FCRA

and concluded that it "does not cover reports used or expected to be used only in connection with

commercial business transactions." Hall v. Phenix Investigations, Inc., No. 15-10533, 2016 WL

1238602, at *3 (5th Cir. Mar. 29, 2016); Mone v. Dranow, 945 F.2d 306, 308 (9th Cir. 1991)

(holding that an earlier version of the FCRA did not include in its purview "[r]eports used for

business, commercial, or professional purposes[.]"); Ippolito v. WNS, Inc., 864 F.2d 440, 452

(7th Cir. 1988) (same); Matthews v. Worthen Bank & Trust Co., 741 F.2d 217, 219 (8th Cir.

1984) (same); Bacharach, 2015 WL 6442493 at *3 (surveying cases); Grigoryan v. Experian

Info. Sols., Inc., 84 F.Supp.3d 1044, 1081–82 (C.D. Cal. 2014) ("It is therefore beyond dispute

that any credit report [the plaintiff] may have used to secure financing . . . , even though

nominally a consumer credit report, was for a 'business purpose,' i.e., purchasing, improving, and reselling homes. It is therefore not deemed a consumer credit report for purposes of the FCRA[.]"); Wisdom v. Wells Fargo Bank NA, No. CV-10-2400-PHX-GMS, 2012 WL 170900, at *2 (D. Ariz. Jan. 20, 2012) ("[C]ourts have held since [the FCRA's] initial passage that 'both the legislative history of the Act and the official administrative interpretation of the statutory terminology involved compel the conclusion that the Act does not extend coverage to a consumer's business transactions.' ") (quoting Sizemore v. Bambi Leasing Co., 360 F. Supp. 252, 254 (N.D. Ga. 1973)); Johnson v. Wells Fargo Home Mortg., Inc., 558 F.Supp.2d 1114, 1121–27 (D . Nev. 2008) (explaining that information in report collected solely for commercial purposes in connection with plaintiff's business did not qualify as a consumer report); Lewis v. Experian Info. Sols., Inc., No. CIV.A. 04-88, 2006 WL 897198, at *2 (E.D. Ky. Apr. 3, 2006) (holding that plaintiffs could not maintain a FCRA claim against credit reporting agency in connection with failed attempts to "obtain equipment and working capital for their business"); Lucchesi v. Experian Info. Sols., Inc., 226 F.R.D. 172, 173–74 (S.D.N.Y. 2005) (holding that FCRA does not apply to report, even one containing consumer information, created for use in connection with the plaintiff's business transaction).

After reviewing the above cases and many others, the Court agrees with the conclusion that the FCRA does not apply where a consumer report is used for a business purpose. There can be no dispute that the use of Boydstun's report in connection with Miranda Homes's attempt to finance a forklift was for a business, not a consumer, purpose. See 15 U.S.C. 1681a(d)(a) (defining "consumer report" as "[A]ny information . . . bearing on a consumer's credit worthiness . . . which is used or expected to be used . . . as a factor in establishing the consumer's eligibility for (A) credit . . . to be used primarily for personal, family, or household purposes.").

Therefore, Boydstun is excluded from presenting any evidence, from Mr. Mettler or from any other source, about economic damages he suffered in connection with the forklift transaction.

Boydstun attempts to avoid this result by relying on a Ninth Circuit case which "held that the plaintiff was entitled to pursue his diminished ability to start a new business as damages resulting from a violation of the FCRA." Pl. Resp. at 6 (citing Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069–70 (9th Cir. 2008). In Dennis, Experian erroneously reported that a judgment had been entered against the plaintiff. Dennis, 520 F.3d at 1066. The district court granted summary judgment in favor of Experian because, in part, the plaintiff failed to show "actual damages." Id. at 1069. The Ninth Circuit reversed, finding that the plaintiff was "hop[ing] to start a business" and that the blemish on his report caused "several lenders to decline his applications for credit, dashing his hopes of starting a new business." Id. In other words, the plaintiff in Dennis had not yet formed a business and did not seek credit on behalf of the business using his own credit report.

Here, by contrast, Miranda Homes was already operating, and Boydstun sought financing for a forklift to be used in that ongoing enterprise. Boydstun's report, while "nominally a consumer credit report," was obviously used for a business purpose, i.e., purchasing equipment for Miranda Homes, and thus it was not covered by the FCRA protections. Grigoryan, 84 F.Supp.3d at 1081–82 ("[A]ny credit report [the plaintiff] may have used to secure financing . . . , even though nominally a consumer credit report, was for a 'business purpose,' i.e., purchasing, improving, and reselling homes. It is therefore not deemed a consumer credit report for purposes of the FCRA[.]").

Finally, Boydstun argues that the persuasive value of the many cases cited above is diminished because those cases relied on Federal Trade Commission ("FTC") guidance

regarding the interpretation of the FCRA that the FTC has since withdrawn. Pl. Resp. at 7–9

(citing Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act:

An FTC Staff Report with Summary of Interpretations (July 2011) ("40 Years Report), available

at: http:// www.ftc.gov/os/2011/07/110720fcrareport.pdf). That argument is unavailing. First,

those cases also relied on the text and legislative history of the statute in concluding that reports

used for a business purpose were not covered by FCRA. E.g. Bacharach, 2015 WL 6442493, at

*3 ("As stated by House representative Sullivan, the FCRA's sponsor, on the house floor: 'The

purpose of the Fair Credit Reporting Bill is to protect consumers from inaccurate or arbitrary

information in a consumer report which is used as a factor in determining an individual's

eligibility for credit, insurance or employment. **It does not apply to reports used for business,**

**commercial or professional purposes.**' ") (quoting 116 Cong. Record 36, 572 (1970) (emphasis

added); see also Mone v. Dranow, 945 F.2d 306, 308 (9th Cir. 1991) (relying on the same

legislative history to conclude that Congress did not intend for FCRA to extend to reports used

for commercial purposes).

     Secondly, the FTC interpretation in the 40 Years Report is not binding. Christensen v.

Harris Cty., 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like

interpretations contained in policy statements, agency manuals, and enforcement guidelines, all

of which lack the force of law—do not warrant Chevron-style deference."). And thirdly, the FTC

is no longer the administrative agency charged with interpreting the FCRA—that duty passed to

the Consumer Financial Protection Bureau in 2010. 40 Years Report at 1–2. In light of the

extraordinary weight of case law supporting Defendant's motion and the clear intent of

Congress, the Court declines to follow the FTC's non-binding interpretation of the FCRA on this

point.

Because the Court concludes that Mr. Mettler's opinion is irrelevant, it does not reach the

question of its reliability.

CONCLUSION

For the reasons stated, Defendants' motion [198] to exclude Plaintiff's expert witness

Greg Mettler is granted. Boydstun is excluded from presenting any evidence regarding economic

damages caused by denial of credit related to the forklift transaction with Miranda Homes.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016.

MARCO A. HERNÁNDEZ
United States District Judge